UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS



| | |
|---|---|
| VIALOG CORPORATION,<br>Plaintiff<br><br>V.<br><br>MICHAEL R. BURNS,<br>Defendant | CIVIL ACTION NO.<br><br>**00 - 12597 REK** |

### COMPLAINT AND DEMAND FOR TRIAL BY JURY

#### JURISDICTION

1. This is an action for reformation of an agreement not to compete (COUNT I), breach of an agreement not to compete (COUNT II), breach of the covenant of good faith and fair dealing (COUNT III), tortious interference with advantageous relationships (COUNT IV), misappropriation of trade secrets in violation of G.L. c. 93A, § 42 (COUNT V), and unfair and deceptive trade practices in violation of G.L. c. 93A, §§ 2, 11 (COUNT VI).

2. The plaintiff, VIALOG Corporation ("VIALOG"), is a Massachusetts Corporation with its principal place of business at 35 New England Business Center, Andover, Massachusetts, 01810.

3. The defendant, Michael R. Burns ("Burns"), is a Texas resident doing business at 8401 Westheimer, Suite 200, Houston, Texas, 77063.

4. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1332(a) because the amount in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and there is diversity of citizenship between the plaintiff and the defendant.

{H:\pa\lit\13997\07095\A0423891.DOC}




## FACTS

5.  VIALOG provides conferencing services, including audio-conferencing, video-conferencing, Web-conferencing, and various related services ("group communication services"). VIALOG's customers range from Fortune 500 companies to small organizations. It sells and markets such services on a nation-wide basis.

6.  In 1999, VIALOG entered a written agreement (the "Acquisition Agreement") to acquire Conference Pros International, Inc. ("CPI") from Burns for $6 million plus the assumption of approximately $465,000 in CPI debt. CPI was a Texas corporation that provided "group communication services." Relevant portions of the Acquisition Agreement are attached as Exhibit A.

7.  VIALOG's acquisition of CPI was part of a "roll-up," which included the acquisition of several similar companies. The roll-up was intended to make VIALOG one of the largest providers of group communication services in the United States. The purchase price reflected synergies that were expected from combining the business relationships and good will of CPI with that of other Vialog companies.

8.  Burns was the principal shareholder, president and a director of CPI. The Acquisition Agreement provided that Burns would resign as President and Director of CPI, but that his wife, Robin Fisher, would succeed him as President.

9.  Article 7.2(d) of the Acquisition Agreement provided that, as a condition to closing:

> The Principal Stockholder [i.e., Burns] shall have executed and delivered to VIALOG a noncompetition agreement, substantially in the form attached as Exhibit 7.2(d).

10.  The form noncompetition agreement that was attached as an exhibit to the Acquisition Agreement provides that:

> During the Restricted Period [separately defined as a period of two years after the filing of the merger Articles and/or Certificates with the Secretary of State of Texas and the Secretary of State of Delaware], Shareholder [Burns] will not, directly or indirectly, for Shareholder's own account or for or on behalf of any other person or entity, whether as an officer, director, employee, partner, principle, joint venturer, consultant, investor, shareholder, independent contractor or otherwise
>
> (a)  engage in the Group Communication business with the then business of the VIALOG Group, or in competition with any business that, to the Shareholder's knowledge, the VIALOG Group actively was planning to enter;
>
> (b)  solicit or accept business in competition with the Company [separately defined as VIALOG and its affiliates] from any (i) clients of the VIALOG Group, or (ii) any prospective clients of the VIALOG Group;
>
> (c)  hire or employ, or attempt to hire or employ, in any fashion (whether as an employee, independent contractor or otherwise), any employee, or independent contractor of the VIALOG Group or solicit or induce, or attempt to solicit or induce, any of the VIALOG Group's employees, consultants, clients, customers, vendors, suppliers, or independent contractors to terminate their relationship with the VIALOG Group; or
>
> (d)  speak or act in any manner that is intended to, or does in fact, damage the goodwill or the business or reputation of the VIALOG Group.

11.  The required Noncompetition Agreement also includes a confidentiality provision, which states that:

> Shareholder will not at anytime, without the Company's prior expressed consent, reveal or disclose to any person outside of the VIALOG Group, or use for shareholder's own benefit or the benefit of any other person or entity, any confidential information concerning the business or affairs of the VIALOG Group, or concerning the VIALOG's Group's customers, clients, or employees ("Confidential Information").
>
> Shareholder further understands and agrees that all Confidential Information however or whenever produced, will be the sole property of the VIALOG Group,

and will not be removed by Shareholder (or anyone acting at Shareholder's direction or on Shareholder's behalf) from the custody or premises of the VIALOG Group without the company's prior written consent.

12. For purposes of the Noncompetition Agreement, the term "Confidential Information" is defined to include:

> ... financial information or plans; sales and marketing information or plans; business or strategic plans; salary, bonus or other personnel information of any type; information concerning methods of operation; proprietary systems or software; legal or regulatory information; cost and pricing information or policies; information concerning new or potential products or markets; models, practices, procedures, strategies or related information; research and/or analysis; and information concerning new or potential investors, customers, or clients. Confidential Information does not include Confidential Information already available to the public through no act of Shareholder's.

13. The Noncompetion Agreement provides that all disputes will be governed by Massachusetts law, and any action to enforce it will be brought in Massachusetts.

14. The Acquisition Agreement further states that the covenants and agreements of each party (including the covenant to execute the required Noncompetition Agreement) would remain operative and in full force and effect subsequent to the closing, and that no obligation of either party may be waived unless such waiver is agreed to in a document signed by the waiving party.

15. The acquisition of CPI closed on or about February 10, 1999. Vialog has performed all of its obligations, and Burns has received all of the promised consideration. Burns signed a Noncompetion Agreement, which is attached as Exhibit C.

16. As a result of a clerical error, the Noncompetition Agreement that was signed by Burns included a geographical limitation stating that the Shareholder would not compete with VIALOG "within the geographical area known as Coachella Valley and Orange County, if in the

later instances the Subsidiary [separately defined as the merger subsidiary of VIALOG] is relocated to Orange County."

17. At the time of the closing, neither party was aware of that the document being signed contained a geographical limitation. CPI is located in Texas. It had never done business or contemplated doing business in the Coachella Valley and Orange County, which are located in California. Both parties intended to sign a Noncompetition Agreement that conformed in all respects with the Noncompetition Agreement that was attached to Acquisition Agreement. That agreement contained no geographical limitation.

18. While a shareholder and officer of CPI, Burns was intimately familiar with the business's operations, procedures and industry techniques. Burns was also familiar with CPI's customers and had overall responsibility for servicing CPI's customer accounts. He had access to CPI's confidential computer files and other data containing sensitive information proprietary to CPI. As a result of VIALOG's acquisition of CPI in 1999, CPI's business operations, procedures and industry techniques, its customers, confidential computer files, and other proprietary information, became the property of VIALOG.

19. In violation of the Noncompetition Agreement, Burns has begun to market and provide group communications services under the name A+ Conferencing. The services provided by A+ Conferencing directly compete with the group communication services provided by VIALOG. Burns' violations of the Noncompetition Agreement include, but are not limited to, the following:

    a) Burns and A+ Conferencing are diverting business to other entities that compete with VIALOG including an entity known as Customized Platform Services.

    b) Burns and A+ Conferencing are using sales agents affiliated with VIALOG to market and sell the services of A+ Conferencing.

    c) Burns and A+ Conferencing have solicited or accepted business in competition with VIALOG from clients and prospective clients of VIALOG.

    d) Burns and A+ Conferencing have solicited or induced, or attempted to solicit or induce customers of VIALOG to terminate their relationships with VIALOG.

20.    Burns' diversion of business away from VIALOG and to A+ Conferencing has caused and continues to cause irreparable damage to VIALOG, its customer relationships and goodwill.

21.    Upon information and belief, Burns has retained customer information such as contact information, order histories, billing information, and confidential pricing information.

22.    Robin Fisher is married to Burns. She served as Secretary and Treasurer of CPI. On or about February 10, 1999, Ms. Fisher entered into an Employment Agreement to serve as president of CPI, which by then had become a wholly-owned subsidiary of VIALOG. Fisher's Employment Agreement is attached as Exhibit D.

23.    Fisher's Employment Agreement provides that she will not directly or indirectly compete with Vialog or CPI, and will not use or disclose proprietary information. As president of CPI, she owed fiduciary duties to Vialog and CPI.

24.    Burns has solicited or induced, or attempted to solicit or induce Fisher, an employee of VIALOG-owned CSI, to breach her Employment Agreement and fiduciary obligations.

25. Burns owns and continues to operate Network Pros, Inc., a Texas corporation. Network Pros Inc. is doing business as TeleSystems Technologies ("TeleSystems"). TeleSystems provides telemarketing services. VIALOG has and continues to outsource telemarketing services to TeleSystems. Burns and TeleSystems have solicited business and accepted payment from Vialog while secretly violating his agreement not to compete.

## COUNT I - REFORMATION

26. VIALOG restates the allegations set forth in Paragraphs 1-26 above as fully set forth herein.

27. Vialog and Burns both intended to enter into a Noncompetition Agreement that satisfied the conditions of the Acquisition Agreement, contained no geographical limitation and conformed in all respects with the document attached hereto as Exhibit B.

28. As a result of clerical error unknown to either party at the time of its execution, a geographical limitation was included in the Noncompetition Agreement executed by the parties.

29. The Acquisition Agreement requires Burns to correct the clerical error, and to perform all covenants and agreements associated with the Acquisition.

WHEREFORE, VIALOG demands judgment reforming the Noncompetition Agreement to eliminate the geographical limitation.

## COUNT II – BREACH OF CONTRACT

30. VIALOG restates the allegations set forth in Paragraphs 1-29 above as fully set forth herein.

31. VIALOG and Burns entered into a valid and binding written contract previously identified as the Noncompetition Agreement.

32. Despite VIALOG's full compliance with the terms of its Agreement, Burns has breached and continues to breach the Noncompetition Agreement.

33. As a result, VIALOG has been damaged in the form of lost profits, lost business opportunity, loss of goodwill and embarrassment as well as incurring legal fees and other expenses. In addition, Burns has been unjustly enriched.

WHEREFORE, VIALOG is entitled to an injunction ordering Burns to comply with the terms of the Noncompetition Agreement a judgment ordering Burns to pay all damages sustained by VIALOG and such other recovery as is described below and/or ordered by this Court.

### COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

34. VIALOG restates the allegations set forth in Paragraphs 1-33 above as fully set forth herein.

35. Burns freely entered into the Acquisition Agreement and the accompanying Noncompetition Agreement for good consideration.

36. Burns has and continues to unfairly and in bad faith engage in activities that violate express and implied covenants of good faith and fair dealing, including express and implied covenants that Burns would not compete with Vialog.

37. Vialog has been damaged by Burns' competing activities, including his violation of the implied covenant of good faith and fair dealing.

WHEREFORE, VIALOG is entitled to an injunction ordering Burns to not to compete and a judgment for money damages.

### COUNT IV – TORTIOUS INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIPS

38. VIALOG restates the allegations set forth in Paragraphs 1-37 above as fully set forth herein.

39. VIALOG has established certain advantageous business relationships associated with its business of providing "group communication services," including relationships that were acquired as a result of its purchase of CPI. These include its relationship with Fisher and with sales agents, as well as customer relationships and goodwill.

40. Burns has intentionally and wrongfully interfered with VIALOG's advantageous relationships in at least the following respects:

   a) Burns has wrongfully induced Fisher to violate contractual and fiduciary by failing to notify Vialog of Burns' activities, and by permitting Burns and his affiliates to use assets of CPI and Vialog without consideration; and

   b) Burns has solicited and induced agents and customers of VIALOG and CPI to direct their business to A+ Conferencing or to third parties, such as Customized Platform Services.

41. As a result, VIALOG has been damaged in the form of lost profits, lost business opportunity and loss of goodwill as well as incurring legal fees and other expenses.

WHEREFORE, VIALOG is entitled to an injunction ordering Burns to comply with the terms of the Noncompetition Agreement and to a judgment for money damages sustained by VIALOG and such other recovery as is described below and/or ordered by this Court.

## COUNT V – MISAPPROPRIATION OF TRADE SECRETS
### (G.L. c. 93, § 42)

42. VIALOG restates the allegations set forth in Paragraphs 1-41 above as fully set forth herein.

43.  VIALOG has developed certain information, procedures, merchandising strategies, pricing information, and customer data that constitute proprietary information and trade secrets.

44.  Burns has embezzled, stolen, unlawfully taken, carried away, concealed, copied and by fraud and by deception obtained said proprietary information and trade secrets in violation of G.L. c. 93, § 42.

45.  VIALOG has been damaged as a result of Burns' unlawful actions, in the form of lost profits, lost business opportunity and loss of goodwill, as well as incurring legal fees and other expenses.

WHEREFORE, VIALOG is entitled to an injunction ordering Burns to return all proprietary information and/or trade secrets in his possession and to a judgment for money damages, an award of double damages under c. 93, §42 and such other recovery as is described below and/or ordered by this Court.

### COUNT VI - UNFAIR AND DECEPTIVE TRADE PRACTICES
### (G.L. c. 93A, §§ 2, 11)

46.  VIALOG restates the allegations set forth in Paragraphs 1 through 45 above as fully set forth herein.

47.  VIALOG and Burns are both engaged in trade or commerce as that term is defined in G.L. c. 93A.

48.  Burns' actions subsequent to entering into the Acquisition Agreement and Noncompetition Agreement are unfair and deceptive trade practices which violate G.L. c. 93A, §§ 2, 11, and were knowingly and willfully committed.

WHEREFORE, VIALOG is entitled to an injunction ordering Burns to comply with the terms of the Noncompetition Agreement and to a judgment for money damages, an award of

treble damages and attorney's fees under c. 93A and such other recovery as is described below and/or ordered by this Court.

## PRAYER FOR RELIEF

NOW, WHEREFORE, VIALOG requests the following relief from this Court:

1.  A preliminary injunction restraining the defendant Michael R. Burns directly or indirectly, on his own behalf or on behalf of others, for the duration of the Noncompetition Agreement, from:

    a) soliciting or accepting business from any client or customer of VIALOG or CPI;

    b) soliciting or accepting business from any prospective client or customer of VIALOG or CPI;

    c) working, directly or indirectly, for any company, enterprise or person involved in the business of group communication services;

    d) interfering or attempting to interfere with VIALOG's or CPI's advantageous business relationships, any efforts to induce employees, consultants, clients, customers, vendors, suppliers, or independent contractors to terminate relationships with VIALOG or CPI; and

    e) speaking or acting in any manner that is intended to, or does in fact, damage the goodwill or business reputation of VIALOG.

2.  An order compelling Burns to immediately return to Vialog and CPI any and all proprietary information or trade secrets in his possession, custody or control.

3.  A permanent injunction on the same terms requested above restraining the defendant Michael R. Burns for such period as the Court determines.

4. Such monetary damages as the plaintiff may prove at trial.

5. An award of double damages pursuant to G.L. c. 93, §42.

6. An award of treble damages and attorneys' fees pursuant to G.L. c. 93A, § 11.

7. An award of interest and costs.

8. such other and further relief as the Court may deem just and proper.

### JURY DEMAND

VIALOG requests a jury on all Counts of this Complaint.

VIALOG CORPORATION

By its attorney,

*/s/ James C. Donnelly, Jr.*
James C. Donnelly, Jr., Esq.
BBO #129700
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

Dated: Dec. 20, 2000